UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                          :
GUSTAVO HOLGUIN,                                          :
                                        Petitioner,       :
                                                          :
                       -against-                          :
                                                          :
WILLIAM LEE,                                              :
                                                          :
                                        Respondent.  :
                                                          :
-----------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/10/2016
```

13 Civ. 1492 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Petitioner Gustavo Holguin brings this pro se petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his conviction of one count of second-degree murder

(the "Petition").  This case was referred to the Honorable James L. Cott for a report and

recommendation (the "Report").  The Report was filed on October 31, 2014, and recommends

that the writ be denied.  Petitioner timely filed objections to the Report on January 26, 2015 (the

"Objections").  For the following reasons, the Report is adopted, and the Petition is denied.

I.      **BACKGROUND**

The facts relevant to the Petition are set out in the Report and summarized here.

According to trial testimony from prosecution witness Robert Vargas, on the evening of

November 16, 1990, he and Juan Carlos Flores left Flores' home and walked downtown.  While

Vargas and Flores were walking down Broadway between 135th and 136th Streets, Vargas

accidentally bumped into Petitioner.  Petitioner gave Vargas a "very bad" and "very ugly" look.

Vargas apologized, but Petitioner threw a beer bottle at Vargas.  Vargas ducked and avoided the

bottle, apologized again and continued walking south toward 135th Street.  After walking down

Broadway "a little," Vargas turned around and saw Petitioner point a gun at him.  Petitioner shot

Vargas, coming towards him until Petitioner was "on top of" Vargas.  Vargas was shot four times -- in the hand, thigh, shoulder and leg -- but survived.  At trial, a ballistic and firearms expert testified that three of the four discharged shells recovered from the crime scene were definitely fired by the same firearm, and the fourth one appeared to come from the same firearm but not definitely so.

During this incident, Vargas lost track of Flores, who was later found dead on 135th Street.  At trial, a forensic pathologist, Dr. Andrea Coleman, testified that the cause of Flores's death was a gunshot wound to the right arm that entered his chest on the right side, perforating both his lungs and heart, and exited the chest on the left side.  She also testified that based on the appearance of Flores' skin, the gun was fired between two and 18 inches away from Flores, and that a person with the type of gunshot wound that Flores suffered would be able to travel from 30 to 50 feet after being shot without leaving a trail of blood as most of the bleeding would be internal.  Dr. Coleman testified using an autopsy report prepared by a pathologist who had subsequently left the Office of the New York City Chief Medical Examiner.  The autopsy report was admitted into evidence as a business record.

Yenny Vargas (unrelated to Robert Vargas), who was dating Petitioner in November 1990, testified that, on the evening of November 16, 1990, when Petitioner arrived at her apartment, he appeared nervous and informed her that he had to leave and that he had a problem. According to Ms. Vargas, Petitioner also stated that he had been involved in a shooting and that he was going to Santo Domingo.  The following month, Ms. Vargas traveled to the Dominican Republic and married Petitioner.  Ms. Vargas stated that she saw Petitioner in the Dominican Republic a few months after their wedding and again in 1994.

2

In July 1991, Detective Ortiz interviewed Ms. Vargas, who said that Petitioner was in the Dominican Republic.  Detective Ortiz contacted law enforcement in the Dominican Republic to confirm Petitioner's whereabouts.  Believing that Petitioner was in the Dominican Republic, Detective Ortiz prepared a "wanted card" and informed the Immigration and Nationalization Service -- now, the U.S. Citizenship and Immigration Services ("USCIS" ) -- that immigration authorities should contact the police if Petitioner returned to the United States.  At that time, Detective Ortiz believed that the United States could not extradite Petitioner from the Dominican Republic.  Detective Ortiz then closed the case as an "exceptional clearance," meaning that the police had exhausted all its means of locating and apprehending the subject at that time.

On March 14, 2003, Robert Scott, a USCIS employee, called Detective Elpidio DeLeon because USCIS had received an application from Petitioner and saw that Petitioner was wanted in connection with a homicide.  On October 30, Petitioner appeared at USCIS and Scott called the police, who arrived and took Petitioner into custody.  Robert Vargas identified Petitioner in a line-up as the shooter from November 16, 1990.

Petitioner was arrested and charged with two counts of murder in the second degree, N.Y. Penal Law § 125.25.  At trial, the prosecution's case spanned three days and consisted of testimony from twelve witnesses, including Robert Vargas; Yenny Vargas; several current and former members of the New York City Police Department, including the ballistic expert; Robert Scott from USCIS; and Dr. Coleman, the forensic pathologist.

Following the jury trial, Petitioner was convicted of one count of murder in the second degree and is currently serving an indeterminate sentence of twenty-five years to life.

3

## II.    LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

A court must undertake a de novo review of any portion of the report to which a specific objection is made on issues raised before the magistrate judge.  *See* 28 U.S.C. § 636(b)(1); *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  When a party makes only conclusory or general objections, or simply reiterates the original arguments made below, a court will review the report strictly for clear error.  *Diaz v. City Univ. of N.Y.*, No. 13 Civ. 2038, 2015 WL 5577905, at *7 (S.D.N.Y. Sept. 22, 2015).  "[A] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate."  *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).  Even when exercising de novo review, "[t]he district court need not . . . specifically articulate its reasons for rejecting a party's objections . . . ."  *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner who is in custody pursuant to a state court's judgment may seek a federal writ of habeas corpus on the ground that his custody is in violation of federal law, provided he has exhausted all available

4

state court remedies, or is excused from doing so.  *See* 28 U.S.C. § 2254(b)(1).

"Federal courts generally will not consider a federal issue in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  A petitioner can overcome the procedural bar of an independent and adequate state law ground if he can demonstrate either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Where a state court has reached the merits of a federal claim, habeas relief may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.* § 2254(e)(1).

## III.   DISCUSSION[1]

The Petition asserts four grounds for relief:  (1) the prosecution failed to prove Petitioner's guilt beyond a reasonable doubt; (2) the prosecution mischaracterized the evidence during summation, which amounts to prosecutorial misconduct; (3) the pathologist who prepared

---

[1]    For the reasons stated in the Report, the Petition is deemed timely as a result of equitable tolling.

the autopsy report did not testify at trial in violation of the Confrontation Clause; and

(4) Petitioner's trial counsel was ineffective for failing to object to the prosecution's

mischaracterization of the evidence, the Confrontation Clause violation and the thirteen year

delay between the date of the crime and Petitioner's arrest and indictment.

The Report recommends that the first three grounds be rejected as procedurally barred

and that the ineffective assistance of counsel ground be rejected on the merits.  The Objections

dispute these recommendations and assert several new claims.  The Objections are overruled and

the new claims are rejected for the reasons stated below.

### A.        The Procedurally Barred Claims

The Report recommends that the Petition's first three grounds for relief be rejected as

procedurally barred because a state court rejected these arguments on an independent and

adequate state law ground -- namely, that the New York Supreme Court, Appellate Division,

First Department, on Petitioner's direct appeal, held that these three claims had not been

preserved at trial and declined to review them.  *See People v. Holguin*, 895 N.Y.S.2d 820 (1st

Dep't 2010).  This recommendation is adopted.

"A federal habeas court will not review a claim rejected by a state court if the decision of

the state court rests on a state law ground that is independent of the federal question and

adequate to support the judgment."  *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal

quotation marks and brackets omitted).  To be "adequate," the state procedural requirement must

be "firmly established and regularly followed" by the state courts.  *Downs v. Lape*, 657 F.3d 97,

102 (2d Cir. 2011) (quoting *Walker*, 562 U.S. at 316).  Under New York law, to preserve a

challenge to a trial court ruling for appellate review, a party must "object to what he or she

believes is a legal error in a trial court's ruling or instruction 'at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.'" *Gutierrez v. Smith*, 702 F.3d 103, 110 (2d Cir. 2012) (quoting N.Y. Crim. Proc. Law § 470.05(2)).  New York's contemporaneous objection rule is "firmly established and regularly followed," and, therefore, its application ordinarily constitutes an adequate state law ground for barring federal habeas review.  *Downs*, 657 F.3d at 102-04.

On Petitioner's direct appeal, the First Department expressly found that "Defendant's challenge to the sufficiency of the evidence" and his "constitutional arguments[] concerning the prosecutor's summation and the autopsy report are unpreserved and we decline to review them in the interest of justice." *Holguin*, 895 N.Y.S.2d at 820.  In the alternative, the First Department rejected any claim that the verdict was against the weight of the evidence, and found no basis for reversal based on the constitutional claims.[2] *Id.*

In seeking a different outcome, the Objections make four arguments:  (1) the Report erred in applying the independent and adequate state bar because the First Department did not explain the basis for its conclusion that the claims were unpreserved; (2) the First Department incorrectly concluded that the insufficient evidence claim was unpreserved; (3) Petitioner's limited English proficiency amounts to cause and prejudice that excuse the procedural default; and (4) Petitioner is actually innocent, and therefore the failure to review these claims would result in a

---

[2]     The First Department's alternative holding, which rejected Petitioner's claims on federal grounds, is of no consequence to the procedural bar.  Federal habeas review is not available if the state court "clearly and expressly" holds that its judgment rests upon a state procedural bar, even if it "addresses the merits in reaching an alternative holding." *Whitley v. Ercole*, 642 F.3d 278, 286 & n. 8 (2d Cir. 2011) (quotation marks omitted).

fundamental miscarriage of justice.  These arguments are unpersuasive.

With respect to the Objections' assertion that the First Department did not explain the basis for its conclusions that the claims were unpreserved, it is reasonable to assume that the First Department relied on New York's contemporaneous objection rule based on the circumstances of this case.  State law reliance must be "clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (quoting *Coleman*, 501 U.S. at 732).  Nonetheless, if there is "no 'good reason'" to question whether there is an independent and adequate state ground for a state court decision, the habeas court may reasonably "presume that silence in the face of arguments asserting a procedural bar indicated that the affirmance was on state procedural grounds."  *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993) (quoting *Coleman*, 501 U.S. at 739).  Here, the failure to make a sufficient contemporaneous objection at trial was the sole basis for the People's arguments to the First Department that the claims were not preserved.  Petitioner also does not suggest any federal law that could be the basis for a finding that Petitioner failed to preserve his challenge to proceedings at a state trial. Accordingly, this argument fails.

With respect to Petitioner's insufficient evidence claim, the Objections assert that, contrary to the First Department's holding, Petitioner did preserve this claim at trial by moving for dismissal at the close of the prosecution's case and again at the conclusion of all the evidence.  In effect, Petitioner asserts that the First Department was incorrect.  "[F]ederal court review of a state's application of its own rules is deferential."  *Downs*, 657 F.3d at 101; *see also Whitley*, 642 F.3d at 286 ("Our task is not to determine whether [the state] ruling was correct, but to determine its adequacy to preclude federal habeas review."  (quoting *Cotto v. Herbert*, 331

F.3d 217, 247 (2d Cir. 2003))).  Consequently, courts "generally assess the adequacy of a state ground of decision by examining whether the rule upon which the state court relied is firmly established and regularly followed, keeping in mind that, in exceptional cases, the exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."  *Downs*, 657 F.3d at 102 (internal citation and quotation marks omitted).

Petitioner does not challenge that New York's rule on how to preserve questions of law for appeal is firmly established and regularly followed, so the remaining question is whether the First Department's application of the rule to Petitioner's insufficient evidence argument was an "exorbitant" misapplication of state law that serves no legitimate state interest.  *See id.* at 105-06. It does not.  "[E]ven where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error" being urged.  *People v. Gray*, 86 N.Y.2d 10, 19 (1995).  Here, trial counsel's objections did not specifically articulate or identify any alleged deficiency in the evidence and instead made only conclusory arguments that the evidence was insufficient.  These general objections do not satisfy the state law requirement for a contemporaneous objection that sufficiently identifies the alleged error.  *See Garvey*, 485 F.3d at 720 (concluding application of New York's preservation rule was not exorbitant because a defendant's general objections prevented the state trial court from "hav[ing] the first opportunity to rule on and possibly rectify any alleged legal error"); *People v. Hawkins*, 11 N.Y.3d 484, 493 (2008) (finding defendant's conclusory allegations about insufficiency of the evidence "did little more than argue that the People failed to prove the essential elements of [the charge]"); *People v. Hines*, 97 N.Y.2d 56, 62 (2001) (same). Accordingly, this argument fails.

With regard to the Objections' argument that Petitioner "was ignorant to the English language," Petitioner's language facility does not excuse his failure to make a contemporaneous objection to preserve his claims.  "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753; *see also Jones v. Armstrong*, 367 F. App'x 256, 258 (2d Cir. 2010) (summary order) (stating that a petitioner's "own ineffectiveness while proceeding *pro se* does not constitute cause for his procedural default"); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) (stating that "circumstances such as youth, lack of education, and illiteracy are not external impediments within the context of excusing procedural default").  As Petitioner's English language ability is not an external impediment, it does not provide cause for the procedural default.

With regard to the Objections' assertion that Petitioner is innocent, Petitioner has not met his burden of proving that the "fundamental miscarriage of justice" exception should apply.  A petitioner may overcome the procedural bar of an independent and adequate state law ground if he can demonstrate "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  A habeas court may grant relief only in an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, *in light of new evidence,* it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *King v. Artus*, 259 F. App'x 346, 347 (2d Cir. 2008) (summary order) (quoting *House v. Bell*, 547 U.S. 518, 536-37 (2006)).  As Petitioner has presented no new

evidence to support his claim of actual innocence, this objection is overruled.

The Petition's first three claims -- insufficient evidence, prosecutorial misconduct, and violation of the Confrontation Clause -- are denied as procedurally barred, meaning that they will not be considered on their merits because the First Department rejected them on the independent and adequate state law ground of failure to preserve the claims at trial.

### B.      Ineffective Assistance of Trial Counsel Claim

The Petition asserts that trial counsel was ineffective for failing to object to the prosecution's mischaracterization of the evidence, the Confrontation Clause violation and the thirteen-year delay between the date of the crime and Petitioner's arrest and indictment.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 687-88.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," so a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Second, a petitioner must demonstrate that the deficiency prejudiced him.  *Id.* at 691-92.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691.  To satisfy the second prong, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. 2015) (quoting *Strickland,* 466 U.S. at 694).

11

### 1.   Failing to Object Based on Prosecutorial Misconduct and Confrontation Clause

Regarding the claims that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct and Confrontation Clause violation, the Objections do not advance new arguments.  Having reviewed the Report and finding no clear error, the Report's recommendations to reject these claims are adopted.

### 2.   Pre-Indictment Delay

Petitioner asserts that, given the strength of the pre-indictment delay claim, trial counsel was ineffective for failing to raise this issue.  The Report correctly concludes that, because the trial court's denial of Petitioner's motion to vacate was based on a reasonable application of *Strickland*, this claim must be rejected.

"'Oppressive' prosecutorial delay may violate the Due Process Clause of the United States Constitution."  *Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977)).  "To prevail on such a claim under federal law, [a petitioner] must prove that the delay resulted in actual prejudice and that the prosecution's reasons for the delay were improper."  *Id.* at 51.  In determining whether a prosecution has been unduly delayed, a New York court will balance five factors: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay."  *People v. Decker*, 13 N.Y.3d 12, 15 (2009) (quoting *People v. Taranovich*, 37 N.Y.2d 442, 445 (1975)).

The trial court weighed the five *Taranovich* factors and concluded that, if trial counsel had moved to dismiss based on the pre-indictment delay, the motion would have been denied.

Among other things, the court found that Petitioner was partly responsible for the delay because he "abscond[ed] to the Dominican Republic immediately after the shooting" and that any attempt to extradite him was unlikely to succeed.  The court also found that nothing in the record suggested that the pre-indictment delay impaired Petitioner's ability to mount an effective defense at trial.  Based on these findings, the state court concluded that defense counsel was not ineffective for failing to raise a claim that would have failed.  The state court's conclusion was a reasonable application of *Strickland*.

The Objections disagree with the trial court's factual findings.  In particular, Petitioner challenges the finding that he was partially responsible for the delay and the finding that any extradition attempt would likely have been unsuccessful.  The Objections also assert that the prejudice prong favors Petitioner because his defense was impaired by the delay.  These arguments are unpersuasive.  State court factual findings "shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1).  A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Where "[r]easonable minds reviewing the record might disagree" as to the relevant finding, that is not sufficient to supplant the state court's factual determination.  *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).  The argument of ineffective assistance of counsel based on pre-indictment delay fails as Petitioner has not met his burden of showing that the state court's factual findings were an unreasonable determination of the facts.

### C.       The New Claims

The Objections argue for the first time that:  (1) the two-year delay between the

indictment and trial amounts to a constitutional violation of Petitioner's right to a speedy trial;

(2) trial and appellate counsel were ineffective for failing to raise this speedy trial issue;

(3) appellate counsel was ineffective for failing to raise the pre-indictment delay issues; and

(4) Yenny Vargas's testimony was protected by spousal privilege and therefore should not have

been admitted at trial. These new claims were not presented in the underlying state proceedings;

nor were they raised in the Petition or presented to Judge Cott.

Petitioner is not entitled to habeas relief based on these new claims because he has not

exhausted them.  A petitioner who is in custody pursuant to a state court's judgment may seek a

federal writ of habeas corpus on the ground that his custody is in violation of federal law only if

provided he has exhausted all available state court remedies.  *See* 28 U.S.C. § 2254(b)(1)(A).  To

exhaust, a petitioner must "'fairly present' his constitutional claim to the state courts, which he

accomplishes 'by presenting the essential factual and legal premises of his federal constitutional

claim to the highest state court capable of reviewing it.'"  *Jackson v. Conway*, 763 F.3d 115, 133

(2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).  Here, Petitioner has

not raised previously raised these claims in state court and therefore is not entitled to relief based

on these claims.[3]

---

[3]        The speedy trial and spousal privilege claims are deemed procedurally defaulted because
"the [state] court to which the petitioner would be required to present his claims in order to meet
the exhaustion requirement would now find the claims procedurally barred."  *Aparicio v. Artuz*,
269 F.3d 78, 91 (2d Cir. 2001) (quoting *Coleman*, 501 U.S. at 735 n.1).  As Petitioner could have
-- but did not -- present these claims on his direct appeal, New York courts would not permit him
to pursue these claims in a new proceeding.  *See id.* ("New York does not otherwise permit

Petitioner is also independently not entitled to habeas relief based on these new claims because, in the context of federal habeas review, "a petitioner is not permitted to raise an objection to a magistrate judge's report that was not raised in his original petition." *Chisolm v. Headley*, 58 F. Supp. 2d 281, 284 n. 2 (S.D.N.Y. 1999) (citing *Harris v. Pulley*, 885 F.2d 1354, 1377-78 (9th Cir. 1988)). Otherwise, "it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments." *Edwards v. Fischer*, 414 F. Supp. 2d 342, 352 (S.D.N.Y. 2006) (quoting *Abu–Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906, 1994 WL 445638, at *5 n. 2 (S.D.N.Y. Aug. 17, 1994)). For this reason as well, Petitioner's new arguments fail.

## IV.    CONCLUSION

For the reasons stated above, the Report is ADOPTED, and the petition for a writ of habeas corpus is DENIED. As Petitioner has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Hoffler v. Bezio*, 726 F.3d 144, 154 (2d Cir. 2013). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

---

collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." (citing N.Y. Crim. Proc. Law § 440.10(2)(c))). In contrast, the new claims regarding ineffective assistance of trial and appellate counsel are not procedurally defaulted since "[i]neffective-assistance-of-counsel claims that are not 'demonstrable on the main record' may be properly raised in a section 440 motion, where the necessary record may be developed in an evidentiary hearing." *Eduardo v. Smith*, No. 10 Civ. 622, 2010 WL 5584599, at *5 (S.D.N.Y. Jan. 11, 2010) (citation omitted).

The Clerk of Court is directed to mail a copy of this Opinion to Petitioner Gustavo

Holguin and close this case.

SO ORDERED.

Dated: March 10, 2016
       New York, New York

                                        **LORNA G. SCHOFIELD**
                                    **UNITED STATES DISTRICT JUDGE**

16